UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE FRANKO,<br>    *Plaintiff*,<br><br>    v.<br><br>SCOTT SEMPLE, *et al.*,<br>    *Defendants*. | No. 3:17-cv-01558 (JAM) |

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Lawrence Franko is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* against the Connecticut Department of Correction ("DOC") Commissioner Scott Semple, Warden Timothy Farrell, Warden Jon Brighthaupt, Dr. Ruiz, Dr. Syed Naqvi, Lisa Simo-Kinzer, and two unidentified judicial marshals. Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment right against cruel and unusual punishment. He is suing Commissioner Semple in his official and individual capacities and all other defendants in their individual capacities only. Plaintiff is seeking monetary damages and declaratory and injunctive relief. Based on my initial review pursuant to 28 U.S.C. § 1915A, I will allow plaintiff's Eighth Amendment claim against some of the defendants to proceed, but will dismiss the claim as to other defendants for failure to allege plausible grounds for relief.

**BACKGROUND**

The following allegations from plaintiff's complaint are accepted as true for purposes of the Court's initial review. Plaintiff has long suffered from claustrophobia and claustrophobia-related issues. The claustrophobia causes plaintiff to suffer from panic attacks and other symptoms when he is confined in overly crowded areas, including transport vehicles used by the

1

Connecticut judicial marshal services. Prison officials have had notice of plaintiff's condition since at least 2009, when plaintiff's claustrophobia was raised during his state court proceedings on March 25, 2009, and again on July 9, 2010. The state court noted the medical condition on plaintiff's March 25 mittimus, which was viewed by prison officials. Prison officials have also been aware of the injuries plaintiff sustained in the past as the result of his claustrophobia. Doc. #1 at 4-5 (¶ 6–13).

On October 1, 2014, plaintiff was transported in a judicial marshal transport van from Cheshire Correctional Institution to MacDougall-Walker Correctional Institution, and then from MacDougall-Walker to Connecticut Superior Court in Rockville in order to attend his state habeas corpus proceeding. On the first leg of the trip, plaintiff complained to judicial marshals John Doe 1 and John Doe 2 that he felt extremely uncomfortable and was experiencing dizziness and chest pain. Both marshals ignored his complaints.

Despite plaintiff's complaints, the marshals forced plaintiff into a second transport van at MacDougall-Walker for the second leg of the trip. At some point during this trip, plaintiff experienced blurred vision and passed out, causing him to fall face first on the ground. When the van arrived at the Rockville courthouse, John Doe 1 and John Doe 2 refused to assist plaintiff or to allow him to exit the van even as other prisoners were allowed to exit. Both marshals prevented plaintiff from attending his court proceeding and informed courthouse staff that his behavior was unstable. The marshals transported plaintiff in the van back to MacDougall-Walker, where he pleaded for medical attention. Plaintiff was examined by a nurse, who found plaintiff to have swollen lips, knee wounds, and extremely elevated blood pressure and heart rate. He later spoke with a doctor who determined that he should no longer be transported in judicial marshal or DOC vehicles for court trips.  Doc. #1 at 5-6 (¶ 15–29).

2

Shortly thereafter, plaintiff was returned to Cheshire where he was again evaluated by medical staff. Dr. Ruiz and mental health social worker Lisa Simo-Kinzer were notified about plaintiff's claustrophobia but failed to act or abate the situation. Doc. #1 at 7 (¶ 30–34).

Prior to the incident on October 1, DOC staff had notified Warden Ferrell and Simo-Kinzer via email about plaintiff's condition and his inability to ride in marshal vans. Plaintiff's attorney, Keith Anthony, also emailed Warden Ferrell and Warden Brighthaupt on several occasions requesting that arrangements be made for alternative transportation because of plaintiff's claustrophobia. Warden Ferrell responded to Anthony that his medical staff had researched and reviewed plaintiff's condition but that there was no record to support individual transportation arrangements at that time. Doc. # 1 at 7 (¶ 35-38 ), 13-17.

Following the October 1 incident, plaintiff's lips became infected and the doctor prescribed medication to treat the infection. Plaintiff appears to allege that he did not receive this medicine. Additionally, plaintiff had an EKG scan performed following the incident on October 1, 2014. Plaintiff was not truthfully informed of the EKG results until March 24, 2016, when Dr. Wright informed him that he had a "mini" heart attack on October 1. Plaintiff alleges that Dr. Ruiz and Dr. Naqvi never advised him that he had had a heart attack. Plaintiff alleges that the harm he suffered resulted from Commissioner Semple's failure to establish adequate protocols to address the mental health conditions of inmates. Doc. # 1 at 8 (¶ 42-46).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from

3

such relief. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless its factual recitations state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (same). Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

Plaintiff principally claims a violation of his rights to be free from cruel and unusual punishment under the Eighth Amendment. The Supreme Court has held that a prison official's "deliberate indifference" to a prisoner's serious medical needs amounts to a violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The Second Circuit in turn has made clear that a prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an *objective* requirement—that the prisoner's medical need was sufficiently serious. *See Spavone v. New York State Dep't of Corr. Serv's.*, 719 F.3d 127, 138 (2d Cir. 2013). The prisoner must show that he suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

Second, there is a *subjective* requirement: that the defendant have acted recklessly—that is, with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action. *See Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence or negligent medical malpractice. *See Hilton v. Wright*, 673 F.3d 120, 122-23 (2d Cir. 2012); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Instead, a

4

prisoner must show that the defendant acted with the equivalent of a criminally reckless state of mind when denying treatment for the prisoner's medical needs. *See Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

Plaintiff's central claim is that he had a serious medical need for alternative means of transportation when being transported to and from prison due to his claustrophobia. It is debatable whether plaintiff's claustrophobia satisfies the objective standard of an urgent medical condition that entails a risk of death, degeneration, or extreme pain. *Compare Goetsch v. Berge,* 3 F. App'x 551, 553 (7th Cir. 2001) ("We doubt whether [plaintiff's] claim that he was placed in a shuttered cell despite his claustrophobia meets the standard of alleging an excessive risk to his health or safety."), *with Allen v. Tucker*, 2015 WL 5693557, at *4 (D. Colo. 2015) ("The Court agrees that [plaintiff's] allegations that he suffers from claustrophobia constitutes a 'serious medical need.'"). However, in light of plaintiff's allegation that his experience in transport on October 1, 2014, caused him to suffer a minor heart attack, I assume for the purposes of this ruling that plaintiff's claims regarding his claustrophobia satisfy the objective standard. I will now consider the subjective component of plaintiff's deliberate indifference claim as to each defendant.

*Commissioner Semple*

Plaintiff's only claim against Commissioner Semple is a generalized allegation that plaintiff's harm resulted from DOC's "lack of procedures and protocols" and that Commissioner Semple's "lack of protocol and conditions for inmates with mental conditions" caused plaintiff to suffer harm. Doc. #1 at 8 (¶ 44-45).

To the extent that plaintiff seeks money damages against defendant Semple in his *official* capacity his claim is barred by state sovereign immunity under the Eleventh Amendment to the

U.S. Constitution. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984). To the extent plaintiff seeks money damages from Semple in his *individual* capacity, his claim is dismissed for failure to sufficiently allege Semple's personal involvement in the alleged constitutional violation. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (noting that "liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant"). Here, plaintiff does not allege any facts indicating Semple was personally involved in the deprivation. Instead, plaintiff alleges that the deprivation would not have occurred had Semple instituted protocols protecting inmates with mental health issues. Because plaintiff has not alleged personal involvement in the deprivation, his claim against Semple in his individual capacity for monetary damages is also dismissed.

Plaintiff need not allege a supervisor's personal involvement in the constitutional violation in his claim for injunctive relief. However, plaintiff's barebones, generalized allegations about the lack of protocols do not state a plausible claim for deliberate indifference to serious medical needs under the Eighth Amendment. Therefore, all claims against Commissioner Semple are dismissed.

### *John Does 1 and 2*

Plaintiff alleges that John Does 1 and 2, the alleged drivers of the marshal van, acted with deliberate indifference to his serious medical needs by refusing to provide alternate transport despite knowledge of his claustrophobia, refusing to provide medical care after plaintiff

exhibited symptoms during the various trips on October 1, refusing to render medical assistance after he fainted, and refusing to allow plaintiff to exit the van at the state courthouse. As a result of the deliberate indifference of John Doe 1 and John Doe 2, plaintiff alleges he suffered a heart attack. Additionally, plaintiff alleges that he repeatedly informed John Doe 1 and John Doe 2 of his condition and the potential serious injuries that could result therefrom. Plaintiff has adequately alleged that John Doe 1 and John Doe 2 deprived him of medical care with actual awareness of a substantial risk that serious harm would result from their actions.

### *Timothy Farrell and Jon Brighthaupt*

Plaintiff alleges that both Warden Farrell and Warden Brighthaupt were notified. Plaintiff has attached an exhibit that shows that plaintiff's attorney informed Warden Brighthaupt and Warden Farrell. Doc. # 1 at 13-18. Accordingly, both Warden Farrell and Warden Brighthaupt were on notice of plaintiff's condition that required medical accommodation, which they allegedly failed to provide. Therefore, I will allow plaintiff's claims against Wardens Farrell and Brighthaupt to proceed.

### *Dr. Ruiz, Dr. Naqvi, and Lisa Simo-Kinzer*

Plaintiff alleges that Dr. Ruiz and Lisa Simo-Kinzer had knowledge of his claustrophobia condition, but failed to do anything in response to address the condition. These allegations—which I am obliged at this initial point of inquiry to accept as true—are legally sufficient to meet the subjective component for an Eighth Amendment claim, although it may be difficult for plaintiff to ultimately carry his burden to establish that that the alleged inaction was accompanied by a criminally reckless state of mind. Accordingly, the Eighth Amendment claim against Dr. Ruiz and Lisa Simo-Kinzer shall proceed for now.

Plaintiff also alleges that Dr. Ruiz and Dr. Naqvi failed to disclose to plaintiff that plaintiff had suffered a minor heart attack. However, plaintiff does not allege that Dr. Ruiz or Dr. Naqvi took the EKG test, or that they actually knew but failed to disclose to plaintiff at the time that he suffered a minor heart attack. Additionally, plaintiff does not allege that knowing about the minor heart attack constituted a serious medical need and that failing to inform plaintiff of the heart attack could cause a risk of serious harm. Nor does plaintiff allege that he suffered any harm as the result of the failure of Dr. Ruiz or Dr. Naqvi to inform plaintiff of the minor heart attack. Therefore, the failure to disclose the heart attack cannot constitute deliberate indifference, and his claim against Dr. Naqvi will be dismissed.

## CONCLUSION

(1) Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs may proceed against Warden Ferrell, Warden Brighthaupt, Lisa Simo-Kinzer, Dr. Ruiz, John Doe 1, and John Doe 2 in their individual capacities for monetary damages. Plaintiff's claims against Commissioner Semple and Dr. Naqvi are dismissed.

(2) The Clerk of Court shall verify the current work addresses for defendants Ferrell, Brighthaupt, Simo-Kinzer, and Ruiz with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the **thirty-fifth (35) day after mailing**. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on him or her, and the defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) Because plaintiff has not identified John Doe 1 or John Doe 2 by name, the Clerk

is not able to serve a copy of the complaint on those defendants in their individual capacities. Plaintiff must, within **ninety (90) days** of the date of this order, conduct discovery and file a notice indicating the first and last name of those two defendants. If plaintiff files the notice, the court will direct the clerk to effect service of the complaint on those defendants in their individual capacities. If plaintiff fails to identify those defendants within the time specified, his claim against them will be dismissed pursuant to Fed. R. Civ. P. 4(m).

(4) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

It is so ordered.

Dated at New Haven, Connecticut this 27th day of November 2017.

*/s/ Jeffrey Alker Meyer*  
Jeffrey Alker Meyer  
United States District Judge